**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

ANTHONY DUANE KYLES

                Petitioner,

v.

                                      Case No. 04-CV-71412

ANDREW JACKSON,

                Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

**I. INTRODUCTION**

Petitioner Anthony Duane Kyles, currently incarcerated at Gus Harrison Correctional Facility in Adrian, Michigan, filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the legality of his four convictions of second-degree murder. For the reasons set forth below, the court shall deny the petition.

**II. FACTUAL AND PROCEDURAL BACKGROUND**

**Trial and Sentence**

Petitioner was charged with four counts of felony murder, perpetrated during an arson. He was tried by jury in Oakland County Circuit Court, the Honorable Deborah Tyner presiding. The proofs presented at trial by the prosecution included the following:

On September 11, 2005, there was a fire at the Pontiac home of Jacqueline ("Jackie") Etchen and Robert Perry. Perry and three of their children died as a result of the fire. According to the prosecution's expert, the fire was intentionally set, and had originated on

the front porch.  In his further opinion, an accelerant was on the floor of the porch trailing to the sidewalk, and was ignited, using a match or lighter or an incendiary device, such as a Molotov cocktail.

Ms. Etchen had been selling drugs from the house for a few months, along with Joyce Alexander and Tracy Emery.  Sometimes they would cheat their customers, and their customers would return and threaten them.

At the time of the fire, Etchen had known Petitioner for a few months.  Petitioner also sold drugs, including on her property.  This led to repeated arguments, where, according to Ms. Etchen, Petitioner would get angry and threaten to kill her.  A few days before the fire, Petitioner threatened to blow up her house if Alexander and Emery did not have his money or his drugs.

Ms. Alexander, who has a child by Petitioner (nicknamed "Kalu"), confirmed the drug disputes between Petitioner and Etchen.  She testified that a few weeks before the fire, Etchen threatened to call the police on Petitioner; he responded by saying he would kill her if she did, and that she had better have the kids out of her house because he was coming back like Rambo.  But Ms. Alexander also provided that she thought Petitioner said this in a joking manner, that Petitioner was fond of Etchen's children, especially one that died in the fire, and that sometimes the arguments between Petitioner and Etchen were just in jest.  After the fire, Petitioner told Alexander that he had heard that the fire was started by a bottle going through a window.

Ms. Emery also confirmed the ongoing disputes over drugs between Petitioner and Etchen, and claimed that Petitioner threatened all three women over Ms. Alexander's stealing his drugs, drugs which all of the women had then smoked.  Emery acknowledged

2

that a neighbor of Etchen's, angry over Etchen's role in the theft of his drugs and property, paid Emery $25 to beat up Etchen.

Keith Holliman was the key prosecution witness, the only witness who claimed to have seen Petitioner start the fire. He was an acquaintance of both Ms. Etchen and of Petitioner. He had met Petitioner in a half-way house. At around 5:00 or 6:00 a.m., on September 11, 1995, Holliman came to Etchen's neighborhood to visit a woman, but since the woman's boyfriend was parked in her driveway, Holliman parked his car and stood outside of it to wait. He saw two people he thought he knew heading towards him. Then Petitioner drove up in a green sports car. Holliman identified a photograh of the car; Ms.Alexander and Ms. Emery had also identified this exhibit as the car that Petitioner drove during the time period in question.

Petitioner exited the car. Holliman had no doubt that this was Mr. Kyle. Petitioner walked toward Etchen's house, passing the other two men Holliman had observed. As Petitioner got close to Etchen's house, he lit what appeared to be a bottle he was holding, and threw it towards the house. Flames came from the porch. Petitioner returned to his car. As he passed Holliman, he told Holliman, "You ain't seen nothing."[1] Holliman drove to a pay phone to report the fire, but did not complete the call because he heard sirens.

A day or two later, Holliman was near the house again, to buy drugs. He saw Petitioner, and he said something to Petitioner about what he had done. Petitioner

---

[1] 10/9/97 Trial Transcript, p 133.

3

responded, "Fuck that Bitch."[2]   Holliman was afraid of Petitioner, and did not want to get involved.  He was also on parole.

Holliman was subsequently arrested on burglary charges, and in the course of being questioned about the burglaries, discussed the fire.  In the first interview, on October 5, 1995, he told the officers that he did not see who set the fire, that he arrived while the fire was in progress and heard Petitioner talking about it with "K.C.".  He also reported that he, Holliman, said to them that they need not have burned the house down, to which Petitioner responded, "Fuck that whore."[3]  Holliman was interviewed again on December 1, 1995, and January 29, 1996.  He gave a different story each time, and repeatedly denied that he saw the fire set.  The officers promised him protection and that they would inform the prosecutor of his cooperation.  They continued to push him, and eventually he told them he saw Petitioner light and toss something that started the fire.  He also testified before a federal grand jury, consistent with his trial testimony.

Antoine Campbell, a twelve year old neighbor, originally told the police that he saw a white man running away from Etchen's house just before the fire, but he subsequently testified at the grand jury that the man was at the side of the house, near the porch, the night before the fire.

The defense at trial was that Petitioner had nothing to do with the firebombing, and that the likely culprits were drug customers angry at Etchen for cheating them.  The jury deliberated for several days, had Holliman's testimony replayed, and were deadlocked at

---

[2]  10/9/97 Trial Transcript, p 134.

[3]  10/9/97 Trial Transcript, p 149.

one point, before returning a verdict, finding Petitioner guilty of four counts of second-degree murder.

Petitioner was sentenced as a fourth felony offender to four life sentences.

### Motion for New Trial and Evidentiary Hearing

Petitioner, through his appointed appellate counsel, filed a motion for new trial, claiming that (1) the police had fatally tainted Holliman's identification of Petitioner with a suggestive single-photo identification procedure, (2) trial counsel had been ineffective in not moving to suppress the identification, and (3) the verdict was inconsistent with the facts and contrary to the great weight of the evidence. The trial judge granted an evidentiary hearing, on the first issue only. Part of the defense argument on this issue was that Petitioner strongly resembled another man in the neighborhood, Marvin Smith, and Holliman might have confused them.

Detective Kenneth Everingham testified that he visited Holliman in prison on February 10, 1997. During the interview, he showed Holliman a single photo of Petitioner, and asked Holliman who this was. Holliman responded that it was Anthony Kyles, or "Koolo." Everingham acknowledged that Petitioner was the focus of the investigation, that no lawyer was present, and that he was aware that Petitioner was incarcerated at the time.

Keith Holliman[4] testified that he met Petitioner at a corrections center, that they were both there for about two or three months, and that he came in contact with him almost every day. Petitioner's room was right across from his. One time, he bought a jacket from Petitioner. Sometimes he saw Marvin Smith at the center, but not often. After they were

---

[4] Spelled "Hollimon" at the hearing.

5

out, he bumped into Petitioner on the street, and they discussed drugs for ten to fifteen minutes. He saw Petitioner on another occasion, for three or four minutes, when Holliman's brother argued with and shot at Petitioner. On the morning of the fire, he looked at Petitioner face-to-face, from about eight feet, as Petitioner returned to his car. He spoke to Petitioner a day or two after the fire, and again, had no problem recognizing him. Holliman admitted he had consumed alcohol, cocaine, and marijuana just before the fire. He told the police that he thought Anthony Kyles lived on Marshall Street.

Records were introduced showing that Holliman and Petitioner were in the center from May to October of 1994, and that Smith was there from September to November, 1994. Photographs of all three men from their prison files were introduced.

Ruby Hall testified that her son, Marvin Smith, could be mistaken for Petitioner (whom she could not remember) from the back, but not face-to-face. Norma Ford, a corrections officer, came in contact with both Petitioner and Smith at the Pontiac Corrections Center. She thought they resembled each other in size, but not in features. Carolyn Kyles testified that she once mistook Smith for her son, but only looking at him from the back. They resembled each other in size, but not in their features. Glynis Johnson, who has two children by Petitioner, also testified that the two men resembled each other from the back.

Marvin Smith testified that he grew up with Petitioner. People sometimes thought that he and Petitioner looked like brothers. The first time Petitioner's mother saw him, she was shocked by the resemblance. Smith had lived on South Marshall.

Petitioner testified that he had very little contact with Holliman at the center, had not been in the room across the hall from him, had never sold him a jacket, and has never lived on Marshall Street.

6

Judge Tyner denied the motion for new trial.

**Appellate Proceedings and Motion for Relief from Judgment**

Petitioner appealed as of right to the Michigan Court of Appeals, raising five issues,

three of which are pertinent to this habeas proceeding:

> I.  Anthony Kyles was denied his rights to counsel, to due process, and to a fair trial because he was misidentified as the firebomber by Keith Holliman, the prosecution's crucial witness, after the police irreparably tainted Holliman's ability to identify the firebomber by the suggestive procedure of showing him a photograph of Kyles without defense counsel being present and when Kyles was in custody and available for a lineup.

> II.  Anthony Kyles was denied the effective assistance of counsel, including that counsel was inadequately prepared for trial and failed to move to suppress the in-court identification by Keith Holliman due to the unconstitutional identification procedure.

> III.  Over defense objection[,] the prosecution was improperly allowed to bolster the credibility of Keith Holliman, its most important witness, with hearsay from Debra Weary that was improperly admitted as a prior consistent statement, and then the prosecutor exacerbated the error in closing arguments by distorting Weary's testimony and saying that Holliman told Weary that he saw Anthony Kyles set the fire.

The Michigan Court of Appeals affirmed in an unpublished per curiam opinion.

*People v Kyles*, 2000 WL 33418395 (Mich. App. June 13, 2000).  Petitioner filed an

application for leave to appeal, which included the above claims, in the Michigan Supreme

Court.  The application was denied by standard order, on March 27, 2001.  *People v Kyles*,

463 Mich. 983, 624 N.W.2d 193 (2001).

On or about May 17, 2001, Petitioner filed a Motion for Relief from Judgment in the

trial court, raising three issues, and an Amended Motion for Relief from Judgment, on or

7

about April 15, 2002[5], raising a fourth issue.  The issues, which included requests for an

evidentiary hearing, were stated as follows:

> I.  Where Defendant was acquitted of both felony murder and underlying arson his conviction for second-degree murder must be vacated and defendant discharged because, as a matter of law, the essential element of causation is lacking in violation of article 1, § 17 to the Michigan Const. of1963 and the Fourteenth Amendment to the United States Constitution.

> II.  Defendant was deprived of effective assistance of trial counsel, failure to present exculpatory evidence and call expert witness for defense.  Defendant was denied due process and right to fair trial.  U.S. const. Amds. V, VI, XIV; Const. Mich. 1963, Art. 1, § 17, 20.

> III.  Defendant was deprived of effective assistance of appellate counsel for failure to pursue meritorious claim of insufficient evidence on essential element of causation on second-degree murder and ineffective assistance of trial counsel for failing to present exculpatory evidence and call expert witness. (Issue I & II).  Violat [sic] U.S. Const. VI, & XIV Amds., Mich. Const of 1963, article 1, § 17.

> IV.  Prosecutor knowingly used false testimony by Jackquline [sic] Etchen to inflame the jury against Defendant, violating Defendant's right to a fair trial and due process under Mich. Const. 1963, art. 1, § 17, 20, and Const., amds, V, XIV.

Judge Tyner denied the motion, on the pleadings, addressing the first three issues

in her opinion and order dated August 21, 2002[6], and the fourth issue in her opinion and

order denying rehearing dated January 5, 2003.

Petitioner filed a delayed application for leave to appeal Judge Tyner's decision in the

Michigan Court of Appeals.  The Court of Appeals denied the application by form order, "for

failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)."  *People*

*v Kyles,* No. 246582 (Mich. App. September 4, 2003).  The Michigan Supreme Court denied

---

[5] See discussion below.

[6] Note that although the original order was dated August 21, 2003, the date was subsequently corrected to 2002.

8

Petitioner's application for leave to appeal on February 27, 2004, also by form order, "because the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v Kyles*, 469 Mich. 1013, 676 N.W.2d 629 (2004).

### Petition for Writ of Habeas Corpus

Petitioner filed his petition for writ of habeas corpus on April 14, 2004, raising six issues stated as follows:

I. The state court's adjudication of Petitioner's first habeas claim was contrary to and involved an unreasonable application of established Supreme Court law, and, was based on an unreasonable interpretation of the facts in view of the evidence presented at trial, where the police conducted an unduly suggestive photographic lineup while petitioner was in custody, which tainted the subsequent in-court identification by the witness.

II. The state court's adjudication of Petitioner's second habeas claim was contrary to and involved an unreasonable application of Supreme Court precedent, and was based on an unreasonable interpretation of the facts in view of the evidence adduced at trial, where no rational trier-of-fact could have found that the required element of causation was proved beyond a reasonable doubt, since the jury acquitted petitioner of first-degree felony murder (by means of arson).

III. The state court's adjudication of Petitioner's third habeas claim was contrary to and involved an unreasonable application of Supreme Court precedent, and was based on an unreasonable interpretation of the facts in view of the evidence presented at trial, where the state trial judge's decision to admit hearsay evidence to bolster the credibility of a prosecution witness, deprived Petitioner of his right to a fundamentally fair trial.

IV. The state court's adjudication of Petitioner's fourth habeas claim was contrary to and involved an unreasonable application of Supreme Court precedent, and was based on an unreasonable interpretation of the facts in view of the evidence adduced at trial, where the prosecutor intentionally misstated the testimony of key witnesses, argued facts that were not in evidence, and allowed perjured testimony to go before the jury.

V. The state court's adjudication of Petitioner's fifth habeas claim was contrary to and involved an unreasonable application of Supreme Court precedent, moreover, was based on an unreasonable interpretation of the facts in view of the evidence presented at trial, where defense counsel was unprepared for trial and rendered constitutionally ineffective assistance by failing to properly challenge the identification

9

testimony of Keith Holliman, by not objecting when the prosecutor argued facts not in evidence, and by defense counsel's failure to present exculpatory evidence.

VI.  The state court's adjudication of Petitioner's sixth habeas claim was contrary to and involved an unreasonable application of Supreme Court precedent, where Petitioner's constitutional claims fell within the requirement of MCR 6.508 which articulates the procedures for obtaining post-appeal relief, where Petitioner was denied his right to effective assistance of counsel on direct appeal, and can make a substantial showing of "actual innocence" and a fundamental miscarriage of justice.

## III.  STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S. Ct. 1495, 146 L.Ed. 2d 389 (2000).  An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* 529 U.S. at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision

10

applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. 529 U.S. at 411.

Additionally, a federal court presumes the correctness of state court findings of fact for habeas corpus purposes unless the petitioner rebuts the presumption with clear and convincing evidence. *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001); 28 U.S.C. § 2254(e)(1).

## IV. ANALYSIS

### A. Statute of Limitations

Respondent argues that the petition "may be untimely."[7]  Under § 2244(d)(1), a one-year limitations period applies to a state prisoner's federal habeas application.  The statute of limitations begins to run from the latest of four circumstances, in this case, the date on which the judgment became final by the conclusion of direct review. See 28 U.S.C. § 2244(d)(1)(A).  In Petitioner's direct appeal, the Michigan Supreme Court denied leave to appeal on March 27, 2001.  The statute of limitations is tolled until the time for seeking review in the United States Supreme Court is expired, regardless of whether a petitioner has actually petitioned for Supreme Court review.  *Abela v. Martin*, 348 F.3d 164 (6th Cir. 2003). Therefore, the statute of limitations in Petitioner's case began to run ninety days after the Michigan Supreme Court order, and would not have expired until June 25, 2002.

A properly filed application for state post-conviction relief will toll the limitations period, 28 U.S.C. § 2244(d)(2), although it does not restart the clock. *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003).  Petitioner asserts that he filed his Motion for Relief from Judgment

---

[7] Respondent's Answer in Opposition to Petition for Writ of Habeas Corpus, p 22.

11

on or about May 17, 2001, and his amended Motion for Relief from Judgment on or about April 15, 2002, both within the statutory period.  The dates in the body of each of these pleadings, for the signature, notarization, proof of service, attached inmate account, etc., are all consistent with the claimed filing dates.  Petitioner has also attached to his Rebuttal to Respondent's Answer copies of certified mail receipts and postal tracking confirmation records that correspond to these dates.

Respondent argues that the circuit court docket sheets, as well as the first page of each motion, indicate that the Motion for Relief from Judgment was filed on August 19, 2002, and the amended motion in September of 2002, dates well outside the statutory period.  However, Respondent also admits that "the front page of the amended motion for relief from judgment also indicates that it was received by Circuit Court Judge Deborah G. Tyner on April 15, 2002."[8]  This is of course the date claimed by Petitioner for this pleading.  The docket entries are confusing, and appear to be inaccurate.  There are no entries for May of 2001.  The entry for August 19, 2002, is "Motion filed w/ attachments".  Two days later, on August 21, 2002, Judge Tyner's Opinion and Order denying Petitioner's motion for relief from judgment, is accurately entered.  It is inconceivable that the motion, which included three fully briefed issues, was decided that quickly.  The docket entries further provide that, on September 11, 2002, the motion for relief from judgment and supporting brief were filed.  This is of course **after** the opinion disposing of the motion was filed.  On January 6, 2003, there are three docket entries: "Motion filed amd/supplemented for reconsideration/Dft," "Motion filed and Brf for Reconsid/Dft," and the order denying the motion for reconsideration.

---

[8] Respondent's Answer in Opposition to Petition for Writ of Habeas Corpus, p 24, n. 3.

Again, it is highly unlikely that the motions would have been filed on the same day they were decided. Furthermore, in the Opinion and Order denying the motion for reconsideration, Judge Tyner wrote that Defendant moved for reconsideration because the judge had failed to address his claim of prosecutorial misconduct, and she had now reviewed and was rejecting the claim. This is the issue Petitioner raised in his amended motion for relief from judgment. If this issue was not filed until September of 2002, as claimed by Respondent, the month after the judge denied the motion for relief from judgment, it seems most unlikely that the pleading would have been accepted and/or that the judge would have reviewed the issue.

The statute of limitations set forth in Section 2244(d)(1) is an affirmative defense, not a jurisdictional prerequisite. *Scott v. Collins*, 286 F.3d 923, 927 (6th Cir. 2002). The party asserting the statute as a defense bears the burden of demonstrating that the statute has run. *Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002). For the reasons discussed above, Respondent simply has not met that burden.

### B. Procedurally Defaulted Claims

Respondent claims that the majority of the issues Petitioner has raised in his petition for writ of habeas corpus have been procedurally defaulted. These include the issues raised for the first time in Petitioner's motion for relief from judgment, and those issues raised on direct appeal but reviewed under a plain error standard due to lack of preservation in the trial court.

Federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729, 111

13

S.Ct. 2546, 115 L.Ed.2d 640 (1991).  In the habeas context, this  precludes federal courts from reviewing claims that a state court has declined to address because of a petitioner's noncompliance with a state procedural requirement. See *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). "In these cases, the state judgment rests on independent and adequate state procedural grounds." *Coleman*, 501 U.S. at 730.

This court reviews *de novo* the question whether a state court, which held that a state procedural rule precluded consideration of a defendant's request for relief, did so on an "adequate and independent" state ground. *Luberda v. Trippett,* 211 F.3d 1004, 1006 (6th Cir. 2000).  For the doctrine of procedural default to apply, a firmly established state procedural rule applicable to the petitioner's claim must exist, and the petitioner must have failed to comply with that state procedural rule. *Warner v. United States*, 975 F.2d 1207, 1213-14 (6th Cir. 1992), *cert. denied*, 507 U.S. 932, 113 S. Ct. 1315, 122 L.Ed.2d 702 (1993). Additionally, the last state court from which the petitioner sought review must have invoked the state procedural rule as a basis for its decision to reject review of the petitioner's federal claim. *Coleman*, 501 U.S. at 729-30.  Even if the last state court from which the petitioner sought review affirmed the conviction both on the merits, and, alternatively, on a procedural ground, the procedural default bar is invoked.  *Rust v. Zent*, 17 F.3d 155, 161 (6th Cir. 1994). If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground.  *Ylst v. Nunnemaker*, 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991).

14

A petitioner may avoid procedural default only by demonstrating that there was cause for the default and prejudice resulting from the default, or that a fundamental miscarriage of justice will result from enforcing the procedural default in petitioner's case.  *Wainwright v. Sykes*, 433 U.S. at 87; *Coleman v. Thompson*, 501 U.S. at 750.  To establish cause, the petitioner must present a substantial reason to excuse the default.  *Id.* at 753.  Cause must be something that cannot be attributed to the petitioner.  *Id.*  A "fundamental miscarriage of justice" occurs only in the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Murray v. Carrier*, 477 U.S. 478, 495-496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *see also Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).  To be credible, such a claim "requires petitioner to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial."  *Schlup*, 513 U.S. at 324. In order to obtain habeas review of the merits of a procedurally-defaulted claim under the "actual innocence" exception, the otherwise-barred petitioner "must show it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt" in light of all the evidence, "including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial."  *Id.* at 327-28.

### 1. Issues Not Raised on Direct Appeal.

Respondent argues that the issues which Petitioner raised for the first time in his motion for relief from judgment, under Michigan Court Rule 6.500 *et seq.,* are procedurally defaulted.  Michigan Court Rule 6.508(D)(3) provides in relevant part that the court may not

15

grant relief to the defendant if the motion alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence, unless the defendant demonstrates good cause for having failed to raise the claim on direct appeal, and actual prejudice, defined in the current context as a reasonable chance of acquittal absent the error.  The trial court found that Petitioner had shown neither cause nor prejudice, and denied the motion.  Both the Michigan Court of Appeals and the Michigan Supreme Court denied leave to appeal on the ground that Petitioner had failed to meet the burden of establishing entitlement to relief under Mich. Ct. Rule 6.508(D).

The Michigan rule, precluding collateral attack on non-jurisdictional grounds which could have been raised on direct appeal, has been recognized as being "firmly established," so as to constitute an adequate state law ground barring habeas relief. *Luberda,* 211 F.3d at 1008.  The Sixth Circuit has specifically held that where, as in Petitioner's case, the Michigan Supreme Court denies leave to appeal on the basis that a petitioner "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)," even stated in a one-sentence order, the court has provided sufficient explanati on that the decision was based on procedural default. See *Hargrave-Thomas v. Yukins*, 374 F.3d 383, 387-88 (6th Cir.2004); *Burroughs v. Makowski*, 282 F.3d 410 (6th Cir.2002); *Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir.2000).  "Despite its brevity, the order constituted a 'reasoned' judgment that adequately explained its procedural basis." *Hargrove* at 388.

Therefore, all of the claims raised in Petitioner's motion for relief from judgment are procedurally defaulted, unless he can establish cause for the default and prejudice resulting from the default, or a fundamental miscarriage of justice.

Petitioner asserts that the cause for his procedural default is the ineffective assistance of his trial counsel and/or appellate counsel. Counsel's deficient performance may constitute cause for procedural default, but only if it is constitutionally ineffective under the standard established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Murray v. Carrier*, 477 U.S. at 488-89; *Howard v Bouchard*, 405 F.3d 459, 478 (6th Cir. 2005). However, attorney ignorance or inadvertence is not "cause" because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must "bear the risk of attorney error." *Murray v. Carrier,* at 488.

In order to prevail on an ineffective-assistance-of-counsel claim, a petitioner must satisfy a two-prong test. First, the petitioner must show that the performance of counsel fell "below the objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. at 688. In so doing, the petitioner must rebut the presumption that counsel's "challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks omitted). The second prong requires that the defendant "show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the confidence in the outcome." *Id.* at 694. For claims of ineffective assistance of appellate counsel, the defendant must show that appellate counsel failed to raise an issue which was reasonably probable to have changed the result on appeal. *Greer v. Mitchell*, 264 F.3d 663 (6th Cir.2001), *Howard*, 405

17

F.3d at 485.[9] Obviously, appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit.  *Greer,* 264 F.3d at 676.

Applying this legal framework to the issues in the habeas petition that Petitioner first raised in his motion for relief from judgment:

### a. Implied Acquittal and Appellate Counsel's Failure to Raise this Issue.[10]

Petitioner's defense at trial was that he was misidentified, that he was not the person that committed the arson that led to the victims' deaths.  He argued in his motion for relief from judgement that his acquittal of felony murder meant that the jury was not convinced beyond a reasonable doubt the he was the perpetrator of the crime, and that therefore there was a failure of proof on the element of causation.  Petitioner further argued that his appellate attorney was ineffective for not raising this issue on direct appeal.

---

[9] In *Mapes v. Coyle*, 171 F.3d 408, 427-28 (6th Cir.), cert. denied, 528 U.S. 946, 120 S.Ct. 369, 145 L.Ed.2d 284 (1999), the Sixth Circuit identified eleven factors to be considered when evaluating a claim of ineffective assistance of appellate counsel:
(1) Were the omitted issues "significant and obvious"?
(2) Was there arguably contrary authority on the omitted issues?
(3) Were the omitted issues clearly stronger than those presented?
(4) Were the omitted issues objected to at trial?
(5) Were the trial court's rulings subject to deference on appeal?
(6) Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?
(7) What was appellate counsel's level of experience and expertise?
(8) Did the petitioner and appellate counsel meet and go over possible issues?
(9) Is there evidence that counsel reviewed all the facts?
(10) Were the omitted issues dealt with in other assignments of error?
(11) Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

,

[10] These allegations form the basis of Petitioner's second and sixth claims for relief.

In denying the motion, Judge Tyner found that Petitioner had not demonstrated good cause for failure to raise his claims on direct appeal, nor actual prejudice, and was therefore not entitled to relief.   As to this specific issue, Judge Tyner found the issue "novel" but unsupported, and that, where the evidence supported conviction of the greater offense, Petitioner suffered no prejudice.  She further found that appellate counsel was not ineffective for not raising this issue, noting that an appellate attorney is not required to raise all arguable claims and is not ineffective for winnowing out weak issues.

The inquiry on cause and prejudice to excuse state procedural default by necessity mirrors an analysis of the merits of the claim. *See Cameron v. Birkett,* 348 F.Supp.2d 825, 836 (E.D. Mich. 2004).   This court finds that Petitioner's argument has no merit.   The Supreme Court has held that inconsistent jury verdicts are permissible.   *United States v. Powell*, 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984); *Dunn v. United States*, 284 U.S. 390, 393, 52 S.Ct. 189, 190, 76 L.Ed. 356, 358 (1932).   Juries are free to render "not guilty" verdicts resulting from compromise, confusion, mistake, leniency or other legally and logically irrelevant factors.   "[W]here truly inconsistent verdicts have been reached, '[t]he most that can be said ... is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt.'" *Powell*, 469 U.S. at 393 (quoting *Dunn*, 284 U.S. at 393).  See also *Mapes v. Coyle*, 171 F.3d 408, 419-429 (6th Cir. 1999).   Consequently, an acquittal is not necessarily to be taken as the equivalent of a factual finding of innocence; nor does it necessarily reflect a failure of proof on the part of the prosecution. *United States v. Espinosa-Cerpa*, 630 F.2d 328 (5th Cir.1980).

19

The issue being without merit, appellate counsel could not have been ineffective for not raising the issue. *Greer,* 264 F.3d at 676.  Petitioner has therefore not overcome the procedural bar to review of this issue.

### b. Ineffective Assistance of Trial Counsel for Failure to Present Exculpatory Evidence and of Appellate Counsel for Failing to Raise the Issue.[11]

In his motion for relief from judgment, Petitioner claimed that trial counsel was ineffective for not calling Fire Inspector Mark Hilborn as a witness, to question him about his September 11, 1995 report, attached to the pleadings.  Hilborn reported finding several lighters throughout the house, and two insurance policies in the dining room.  He made a list of questions that the mother should be asked, including why there was a lighter on the children's bed, whose names were on the insurance policies, and where were the three surviving children who were not at home at the time of the fire.  Hilborn also expressed concern with the fact that Ms. Etchen's white dress was not very dirty, despite the amount of fire damage.  Petitioner also attached to his pleadings an apparent police report, providing that Etchen was paid a portion of the proceeds for each of the decedents, for a policy taken out by Robert Perry in March of 1993.  Petitioner further claimed that the cause for having failed to previously raise the issue was ineffective assistance of appellate counsel.

Judge Tyner held that Petitioner had not demonstrated "good cause" necessary for relief: Petitioner was alleging that Ms. Etchen was the arsonist, but his proffered proofs failed to demonstrate that she was.  "Without this information it is impossible to determine that trial counsel was ineffective."[12]  Decisions as to which witnesses to call were considered to be trial

---

[11]  These allegations form the basis of Petitioner's fifth and sixth claims for relief.

[12]  8/21/03 Opinion and Order, pp 3-4.

strategy.  Petitioner had not shown that his appellate counsel was ineffective for not raising

this issue, since Petitioner had not demonstrated that the issue was "worthy of mention on

appeal."[13]  Judge Tyner further held that Petitioner had not demonstrated actual prejudice,

evaluating the alleged error in light of the proofs of guilt at trial.

        To overcome the state procedural bar, Petitioner must establish that both trial counsel

and appellate counsel were ineffective.  *Howard*, 405 F.3d at 478.  To succeed on an

ineffective assistance of counsel claim, a petitioner must show (1) that his lawyer's

performance was deficient and (2) that the deficiency prejudiced the defense. Strickland, 466

U.S. at 687.  Judicial review of the lawyer's performance must be "highly deferential," and

"indulge a strong presumption" that a lawyer's conduct in discharging his duties "falls within

the wide range of reasonable professional assistance," since reasonable lawyers may

disagree on the appropriate strategy for defending a client. *Id.* at 689.  Where counsel

proceeds according to an objectively reasonable strategy, his performance is generally

deemed effective. See *Miller v. Francis*, 269 F.3d 609, 615-16 (6th Cir.2001).   Under

*Strickland*, it is presumed that decisions of what evidence to present and whether to call or

question witnesses are matters of trial strategy. See *Hutchison v. Bell*, 303 F.3d 720, 749 (6th

Cir.2002).

        Here, defense counsel pursued a theory that the fire was probably set by a disgruntled

drug customer who had been cheated by Ms. Etchen.  While Hilborn was suspicious of

Etchen, his suspicions would be inadmissible speculation. *See*, *People v. Borney*, 110 Mich.

App. 490, 497, 313 N.W.2d 329 (1981); Mich. Rules Evid. 602, 701.  As to the evidence that

---

[13] 8/21/03 Opinion and Order.

21

Hilborn observed, the lighters were not connected with the fire; most people have insurance policies on their loved ones for innocent reasons, including to cover medical and burial expenses; and the "too clean" dress (if, in fact, scientifically verifiable, which is questionable) was consistent with Ms. Etchen running out of the house right away. Although the defense would not have had to prove that Ms. Etchen set the fire, without more evidence to indicate that she had, defense counsel could reasonably have feared that so accusing the woman who lost three children and her long time companion would simply backfire and prejudice the jury against defense counsel and her client.

Considering the above, particularly in light of the presumption that trial counsel's decision was based on trial strategy, there is not a reasonable probability that the Michigan appellate courts would have reversed Petitioner's convictions, had appellate counsel raised the issue. Appellate counsel was therefore not ineffective. Again, Petitioner has not overcome the procedural bar.

### c. Prosecution's Presentation of False Evidence, and Appellate Counsel's Failure to Raise the Issue on Direct Appeal.[14]

In his Amended Motion for Relief from Judgment, Petitioner alleged that, when Ms. Etchen testified at trial that all six of her children were in her home the morning of the fire, and that her son Ernest woke her up, she was giving false testimony and the prosecutor knew this. Petitioner attached to his pleading a copy of Fire Inspector Hilborn's September 11, 1995 report, which provided that three of the children were not home that morning, and a newspaper article, providing that the three oldest children, including Ernest, was not at home when the fire

---

[14] These allegations form the basis of Petitioner's fourth, fifth, and sixth claims for relief.

started.  Petitioner also asserted, as cause, that appellate counsel had been ineffective.  Judge

Tyner, in the opinion and order denying reconsideration, held that she did not find that the

Prosecutor's conduct was improper.

In his petition, Petitioner further asserts that the police report of Ms. Etchen collecting

a portion of the insurance proceeds for each of the decedents also supports his allegation that

Etchen gave false testimony.

Petitioner has not established the cause and prejudice necessary to avoid procedural

default.

The "deliberate deception of a court and jurors by the presentation of known false

evidence is incompatible with rudimentary demands of justice." *Giglio v. United States*, 405

U.S. 150, 153, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) (citations and internal quotations omitted).

This rule applies to both the solicitation of false testimony and the knowing acquiescence in

false testimony. *Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959).

In order to prove this claim, a defendant must show that (1) the evidence the prosecution

presented was false; (2) the prosecution knew it was false; and (3) the false evidence was

material. *United States v. Hawkins*, 969 F.2d 169, 175 (6th Cir.1992).  Petitioner has failed to

do this.

First, Petitioner has not supported his claim that the testimony was false.  At trial, a

neighbor testified that when Ms. Etchen came over to call 911 to report the fire, three of her

children were running with her.[15]  According to Ms. Etchen's testimony, as she ran out of the

burning house to call for help, Robert Perry brought three of the children out and left them with

_____

[15]  10/7/97 Trial Transcript, p. 20.

23

her as he ran back into the house to try to save the others, and a neighbor told her to bring the children over to her house.[16]  By the time the fire personnel arrived, these children would have been at the neighbor's, and considering Etchen's emotional distress and the confusion of the moment, the fire investigators could easily have misunderstood whether or not those children had been at home.

Nor has Petitioner shown that the testimony, true or false, was material.  Whether or not three or six children were at home in no way went to the ultimate question of who set the fire. While Ms. Etchen's credibility might have been affected had the jury been told she was lying about this point, she did not see who set the fire, and her testimony that went to Petitioner's motive was fully corroborated by other witnesses.  Since the issue lacks merit, Petitioner has not shown that appellate counsel was ineffective for not raising it on appeal.  Nor, for the same reasons, has Petitioner shown the requisite prejudice from the default.

### 2.  Unpreserved Issues Raised on Direct Appeal.

Respondent argues that the following issues are procedurally defaulted because the Michigan Court of Appeals, in the last reasoned opinion, decided them on adequate and independent state procedural grounds.

### a. Admission of Hearsay Bolstering Holliman's Credibility.[17]

Petitioner claims that it was error to admit a prior statement of Mr. Holliman that bolstered his trial testimony, and that the issue was preserved by an adequate objection.

---

[16]  10/7/97 Trial Transcript, p. 62.

[17]  These allegations form the basis of Petitioner's third claim for relief.

24

Alternatively, Petitioner argues ineffective assistance of trial and appellate counsel as cause to excuse procedural default.

Deborah Weary testified at trial that she visited Keith Holliman in the jail in October of 1995. When asked what Holliman told her about being released, defense counsel objected on hearsay grounds. After a brief bench conference, the prosecutor argued that this would be admissible as a prior consistent statement, under Mich. Rule Evid. 801(d)(1)(b). Defense counsel objected that the prosecutor was "reaching" and that the evidence was irrelevant. The trial court overruled the objection. Ms. Weary testified that Holliman told her that he did not know when he would be released, that he had witnessed a home that caught on fire, and three children died in the process.

On direct appeal to the Michigan Court of Appeals, Petitioner argued that the admission of this evidence violated Michigan law. Petitioner claimed that because the statement was not made prior to the alleged motivation or influence to fabricate arose, it did not qualify as a prior consistent statement. To support this claim, Petitioner attached excerpts of transcripts from Holliman's grand jury testimony and from a statement to the police, and asked the Court of Appeals to take judicial notice of them.

The Michigan Court of Appeals held that the general hearsay objection was inadequate to preserve the issue of whether the statement was a prior consistent statement, and that the issue was therefore waived. The Court further held that, even if improperly admitted, the error, in light of the evidence of guilt, would not warrant reversal.

The decision of the Court of Appeals rests on an independent and adequate state procedural rule. It is a firmly established Michigan procedural rule that an objection on one ground is insufficient to preserve an appellate argument based on another ground. See *e.g.*,

*People v. Aldrich*, 246 Mich.App 101, 113, 631 NW2d 67 (2001); *People v. Asevedo*, 217 Mich.App 393, 398, 551 NW2d 478 (1996); *People v. Stimage*, 202 Mich.App. 28, 30, 507 N.W.2d 778 (1993).

Petitioner cannot establish ineffective assistance of either trial or appellate counsel as cause to excuse the procedural default.  The statement itself appears to be a prior consistent statement if understood to mean *that Holliman witnessed the fire being set,* something he did not admit to the police in the initial October interview.  Otherwise, the statement means little, only that Holliman saw the fire at some unspecified point.  Whichever interpretation, the prejudice standard for *Strickland* cannot be met, as there is no reasonable probability that with a more comprehensive objection, the result of the trial would have been different.  For the same reason, there is no reasonable probability that the Michigan Court of Appeals would have reversed, had appellate counsel raised the issue that trial counsel's failure to adequately object constituted ineffective assistance of trial counsel.

It should be further noted that, even if Petitioner could overcome the procedural bar, the issue still could not be reviewed by this Court, because the question raised goes to the application of a state evidentiary rule.  As such, it is not a constitutional claim and is not cognizable in a *habeas corpus* petition.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); *Serra v. Michigan Dept. of Corrections*., 4 F.3d 1348, 1354 (6th Cir.1993).  "Errors by a state court in the admission of evidence are not cognizable in habeas corpus proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir.1994).

26

### b. Prosecutorial Misconduct in Closing Argument[18]

In closing statement, the prosecutor argued that, "Recall...Debra Weary, before he [Holliman] even spoke with the investigators, he spoke to Debra Weary in October, 1995. And what did he tell her?  That he observed, he saw someone set fire to this house.  He saw this defendant, Anthony Kyles set fire to that house."[19]  There was no objection.

Petitioner correctly alleges that the prosecutor misstated Ms. Weary's testimony, making it far more damning than it was.  Petitioner also alleges that the prosecutor argued facts not in evidence, when he stated that Ms. Weary spoke to Holliman before he spoke to the investigators.

Petitioner raised this issue in the Michigan Court of Appeals, citing only Michigan law. The Court of Appeals reviewed the argument under the standard for unpreserved claims of

---

[18]  These allegations form the basis of Petitioner's fourth and fifth claims for relief.

[19]  10/14/97 Trial Transcript, p 5.

27

prosecutorial misconduct,[20] and concluded that neither the testimony, nor its "exaggeration" by the prosecutor, were likely decisive of the outcome of the case.

The decision of the Court of Appeals rests on an independent and adequate state procedural rule. The Sixth Circuit Court of Appeals has recognized that the failure to object rule is regularly followed by Michigan courts in the context of prosecutorial misconduct claims. *Simpson*, 238 F.3d at 408-409; *Toler v. McGinnis*, 23 Fed. Appx. 259, 269 (6th Cir. 2001); *see also People v. Schutte*, 240 Mich. App. 713, 613 N.W.2d 370, 377 (2000), *overruled in part on other grounds Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) ("Appellate review of allegedly improper conduct by the prosecutor is precluded where the defendant fails to timely and specifically object; this Court will only review the defendant's claim for plain error.").

Petitioner claims, for the first time, that the cause for his procedural default was ineffective assistance of trial counsel and of appellate counsel. Aside from the question of whether the prosecutorial misconduct issue was ever presented to the state courts as a federal

---

[20] "Absent an objection or a request for a curative instruction, this Court will not review alleged prosecutorial misconduct unless the misconduct is sufficiently egregious that no curative instruction would counteract the prejudice to defendant or unless manifest injustice would result from failure to review the alleged misconduct." *People v. Kyles*, No. 207355, Slip opinion, p 2 (citation omitted). In the context of unpreserved claims of prosecutorial misconduct, the Michigan Court of Appeals uses the curable by instruction/manifest injustice standard interchangeably with the plain error standard. Compare *People v. Matuszak*, 263 Mich.App. 42, 48, 687 N.W.2d 342 (2004); *People v. Barber*, 255 Mich.App. 288, 296, 659 N.W.2d 674 (2003) (unpreserved claims of prosecutorial misconduct are reviewed for plain error), with *People v. Rodriguez*, 251 Mich.App. 10, 30, 650 N.W.2d 96 (2002) ("Appellate review of allegedly improper conduct is precluded if the defendant fails to timely and specifically object, unless an objection could not have cured the error or a failure to review the issue would result in a miscarriage of justice," citing *People v. Stanaway*, 446 Mich. 643, 687, 521 N.W.2d 557 (1994).

claim,[21] and whether his claims of ineffective assistance of counsel are themselves procedurally defaulted[22], Petitioner has again failed to meet the *Strickland* prejudice standard.  In light of the substantial evidence of guilt, there is not a reasonable probability that the result of the trial or the appeal would have been different had trial counsel objected or appellate counsel raised the issue on direct appeal.

### 3.  Actual Innocence[23]

As to each of the above issues, Petitioner argues that the procedural default should be excused, because the constitutional violations have resulted in the conviction of one who is actually innocent.  Petitioner had not presented any new, reliable evidence  to support this claim, nor has he convinced this Court that the alleged constitutional violations would otherwise have entitled him to habeas relief.[24]

───────────────────

[21] A prisoner's federal constitutional claims must be fairly presented to the state courts before seeking federal review.  See *Baldwin v. Reese*, 541 U.S. 27, 28, 124 S.Ct. 1347, 158 L.Ed. 2d 64 (2004).

[22] See *Edwards v. Carpenter*, 529 U.S. 446, 450-51, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000) ("A procedurally defaulted ineffective-assistance-of-counsel claim can serve as cause to excuse the procedural default of another habeas claim only if the habeas petitioner can satisfy the "cause and prejudice" standard with respect to the ineffective-assistance claim itself.").

[23] These allegations form the basis of Petitioner's sixth claim for relief, as well as his arguments that each of his procedurally defaulted claims should be reviewed.

[24] In support of his June 29, 2005, "Motion to Stay the Proceedings for the Appointment of Counsel and the Dispensing of Funds to Retain Investigative Services," Petitioner attaches a joint affidavit from his two sisters.  For the reasons discussed in the court's order denying Petitioner's June 29 motion, the affidavit does not constitute new, reliable evidence of actual innocence under the standards set forth in *Schlup v. Delo*, 513 U.S. 298, 316 (1995).

**C. Suggestive Identification Procedure and Counsel's Failure to Move to Suppress.[25]**

At the hearing on the motion for new trial, it was established that Holliman was shown and identified a single photograph of Petitioner, in the absence of counsel, at a time when Petitioner was the focus of the investigation and in custody.  Petitioner claims that his rights to counsel and to due process were violated by the suggestive, counsel-less procedure, that he was misidentified as a result, and that his trial counsel was ineffective for not moving to suppress the in-court identification.

In denying the motion for new trial, Judge Tyner found it "debatable" whether the showing of the photograph in these circumstances even constituted a photo lineup, but nonetheless made the determination that there was an independent basis for Holliman's identification of Petitioner.  She further found that trial counsel was not ineffective, because there was no basis for suppression.  The Michigan Court of Appeals upheld the trial court, finding that there was clear and convincing evidence that Holliman's in-court identification had an independent basis: "In light of this record, we agree with the trial court that the witness was able to identify defendant from his own experience and was not susceptible to any possible suggestiveness stemming from being shown defendant's photograph."  The Court further held that trial counsel had nothing to gain from challenging the identification, and was therefore not ineffective. *People v Kyles*, 2000 WL 33418395*2.

An identification procedure violates a defendant's right to due process if it was so unnecessarily suggestive as to run the risk of irreparable mistaken identification. *Stovall v.*

---

[25]  These allegations form the basis of Petitioner's first, fifth and sixth claims for relief.

30

*Denno*, 388 U.S. 293, 301-02, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).   However, even if the confrontation was unnecessarily suggestive, if the identification is nonetheless reliable, it will be admissible.  See *Manson v. Braithwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Carter v. Bell*, 218 F.3d 581, 605 (6th Cir.2000).   The "primary evil to be avoided is a very substantial likelihood of irreparable misidentification." *Neil*, 409 U.S. at 198 (citing *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968)).

Showing a witness a single photograph of a suspect has been recognized as being extremely suggestive.  See *e.g., Simmons*, 390 U.S. at 383 ("This danger [of misidentification] will be increased if the police display to the witness only the picture of a single individual who generally resembles the person he saw, or if they show him the pictures of several persons among which the photograph of a single such individual recurs or is in some way emphasized."); *Carter v. Bell*, 218 F.3d 581, 605-606 (6th Cir. 2000).  Nonetheless, in *Manson v. Brathwaite*, 432 U.S. 98, the United States Supreme Court refused to adopt a *per se* rule that an identification based upon examination of a single photograph would be inadmissible at trial. *See also, United States v. Causey*, 834 F.2d 1277 (6th Cir.1987) (identification reliable despite single photo identification).

In judging reliability, the totality of the circumstances are evaluated, including the factors described in *Manson* and *Biggers*: (1) the opportunity of the witness to view the defendant at the initial observation; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the defendant; (4) the level of certainty shown by the witness at the pretrial identification; and (5) the length of time between the initial observation and the identification. *Manson*, 432 U.S. at 114; *Biggers*, 409 U.S. at 199-200.

31

Applying these factors, the decision of the Michigan Court of Appeals, that there was a basis for the identification independent of the photograph, was neither contrary to nor an unreasonable application of federal law.  As the Court of Appeals explained:

> The record indicates that the witness became fairly well acquainted with defendant while the two were incarcerated in the same facility prior to the fire. There was evidence that the two met and conversed on at least two occasions after their incarceration, but before the fire.  The witness recognized defendant when he saw defendant starting the fire, and the witness briefly discussed the matter with defendant shortly after the fire.  In light of this record, we agree with the trial court that the witness was able to identify defendant from his own experience and was not susceptible to any possible suggestiveness stemming from being shown defendant's photograph.

*People v Kyles*, 2000 WL 33418395 at *2.  Holliman also testified that he got a good look at Petitioner at the scene, that the light was adequate, and that he was certain of his identification. The evidence concerning Petitioner's resemblance to Marvin Smith was not particularly compelling, and in no way undermines the conclusion that Holliman's identification of Petitioner was reliable.

Likewise, the conclusion of the Court of Appeals that trial counsel was not ineffective for not moving to suppress the identification was neither contrary to nor an unreasonable application of federal law.  Petitioner has not shown prejudice under *Stickland,* that there is a reasonable probability that the result of the proceeding would have been different. *Id.,* 466 U.S. at 694.

This analysis is not altered by virtue of Petitioner not being represented at the procedure and being available for a corporeal lineup.  The Sixth Amendment does not guarantee an accused the right to counsel at photo arrays. *Moore v. Illinois*, 434 U.S. 220, 227-28, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977); *United States v. Ash*, 413 U.S. 300, 321, 93 S.Ct. 2568, 37

L.Ed.2d 619 (1973).[26]  Nor is there a constitutional right to a corporeal lineup.  See, e.g.,

*Branch v. Estelle*, 631 F.2d 1229, 1234 (5th Cir.1980); *Payne v. Smith*, 207 F. Supp.2d 627,

645 (E.D. Mich. 2002); *United States v. Gerard,* 781 F.Supp. 479, 481 (E.D. Tex.1991).

## V. CONCLUSION

The decisions of the Michigan appellate courts were not contrary to nor an unreasonable

application of federal law as determined by the United States Supreme Court.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.


     S/Robert H. Cleland                 
     ROBERT H. CLELAND
     UNITED STATES DISTRICT JUDGE

Dated:  August 26, 2005


I hereby certify that a copy of the foregoing document was mailed to counsel of record on this
date, August 26, 2005, by electronic and/or ordinary mail.


     S/Lisa G. Wagner                   
     Case Manager and Deputy Clerk
     (313) 234-5522

---

[26]  An accused's right to have counsel present at a pre-trial identification
procedure only attaches to corporeal lineups conducted at or after the initiation of
adversarial judicial criminal proceedings. *Moore v. Illinois*, 434 U.S. at 227-28.

S:\Cleland\JUDGE'S DESK\Even Orders\04-71412.Kyles.OpinionDenyHabeas.wpd